# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-21-00201-CV

**Sandra Pruitt Higginbotham, Appellant**

**v.**

**Hulon Ted Higginbotham, Appellee**

### FROM THE 207TH DISTRICT COURT OF COMAL COUNTY
### NO. C2019-1494A, THE HONORABLE RANDAL C. GRAY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Sandra Pruitt Higginbotham appeals from the trial court's final decree of divorce that divided the parties' marital estate by a mediated settlement agreement (the MSA).[1] In five issues, Sandra challenges the MSA and the award of attorney's fees. For the following reasons, we affirm the final decree.

## BACKGROUND

The parties married in 1997 and separated in July 2019. The following month, Sandra filed a petition for divorce, and Ted filed a counterpetition. Based on a rule 11 agreement "regarding the packing and removal by Sandra of the items from the marital residence," Sandra had access to the marital residence for two days in September to remove specified items that included her "office files."

---

[1] Because the parties have the same last name, we refer to them as Sandra and Ted.

In January 2020, the trial court ordered the parties to mediation. Pursuant to a rule 11 agreement that was filed on May 7, the parties agreed to supplement all discovery by May 20 and to reset the mediation to occur on June 10. At the end of May, Sandra amended her petition to allege cruel treatment by Ted among her stated grounds for divorce.

At the June 10 mediation, the parties were represented by their respective counsel, Sandra had the assistance of a financial advisor, and the parties were in separate rooms and did not directly communicate with each other. Both the parties and their attorneys signed the MSA, acknowledging that they had reviewed and agreed to its terms. The MSA included the parties' agreement to the division of their property and debts. Sandra was awarded all interest in her "[City Public Service] CPS annuity/pension [certificate number] 96689." The MSA also included their stipulation that they had "voluntarily accepted the benefits of this settlement and the judgment that will follow based upon the terms of the settlement agreement," and the parties agreed that they waived "any right to appeal following rendition of the judgment in this case" and that any discovery obligations "shall immediately cease upon the execution of this [MSA], including the requirement for either party to respond to outstanding discovery requests or supplement any discovery responses." Pursuant to the parties' agreement, Ted and his attorney appeared for an uncontested hearing later in June, and the trial court granted the parties' divorce but did not sign a final decree of divorce. Sandra's attorney was in the process of preparing it.

After Sandra's attorney completed preparing the final decree, Sandra refused to sign it. In response, Ted filed a motion to enter the final decree, and Sandra's attorney filed a motion to withdraw and motion for continuance. The trial court considered the motions at a hearing in October 2020. After she was sworn, Sandra admitted to the trial court that she signed the MSA and that the decree properly reflected the parties' agreement, but she testified that she

2

"was misled during mediation very badly" by the mediator, that her attorney "was silent" when she was misled, that she did not find out about certain information until after the mediation was over, and that she "was given information that [Ted] has hidden assets." The trial court granted Ted's motion to enter the final decree, denied Sandra's motion for continuance, and granted her attorney's motion to withdraw.

Sandra obtained new counsel and filed a motion for new trial. Among her stated grounds for new trial, she raised newly discovered evidence and family violence. Sandra contended that she had been a victim of family violence that was perpetrated by Ted "on numerous instances over a three year period" and alleged that he had "shouted and threatened" her. She also contended that when the mediation occurred, she did not have access to a document (the Document) that she needed to prove the separate property component of her annuity pension. The Document contained information pertaining to the 2007 settlement of a discrimination lawsuit that she had filed against her employer CPS and her pension from her employment with CPS. Approximately two weeks after the mediation, Sandra picked up folders from Ted's attorney's office, and one of the folders contained the Document.

In December 2020, the trial court held a hearing on Sandra's motion for new trial. Sandra's attorney admitted during the hearing that the Document was "hers in [the] first place" and that Sandra "probably" had possession of it within the preceding year to the parties' divorce but that it was "taken during the separation" and that Sandra had been unable to locate a copy. Following the hearing, the trial court signed an order granting her motion for new trial as to

3

Ted's motion to enter the final decree and ordered Sandra to pay attorney's fees to Ted's attorney in the amount of $1,800.[2]

In early 2021, Ted filed a subsequent motion to enter the final decree, and Sandra filed a motion to set aside the MSA on the grounds that it was procured by fraud, duress, coercion, or other dishonest means. Sandra contended that at the time of the mediation, she "was under a great amount of emotional distress" because her mother's health was deteriorating, that she was a victim of domestic violence and the "environment at the mediation impaired her ability to make decisions," and she "did not have a copy of the critical document" in her possession at the time of the mediation. She contended that she obtained the Document on June 23, 2020, when she "received a call to pick up" items from Ted's attorney's office that were specifically awarded in the MSA, that the items "included some folders containing documents that [she] had been requesting," that the Document was in one of the folders, and that it "contained the calculation of Petitioner's monthly retirement benefit $5,993.17 if she had retired in 2007, rather than the settlement amount of 10,268.08." She explained that she "did not consider at the time of mediation that she could refuse to enter into an agreement which was based on incomplete information"; that she had attempted to obtain the Document from CPS, but CPS "was uncooperative," and from her attorney who represented her in the lawsuit against CPS, but he

---

[2] When asked by the trial court, Sandra's attorney stated that Sandra was willing to pay attorney's fees of $1,800 if the trial court granted her motion for new trial. *See Equitable General Ins. Co. v. Yates*, 684 S.W.2d 669, 671 (Tex. 1984) ("A conditional grant of a motion for new trial based on a party's payment of costs is well within the trial court's discretion."); *Harris v. Caldwell*, No. 05-01-00480-CV, 2003 Tex. App. LEXIS 1028, at *5 (Tex. App.—Dallas Feb. 4, 2003, no pet.) (mem. op.) ("Generally, a trial court does not abuse its discretion by conditionally granting a motion for new trial upon the payment of opposing counsel's attorney fees."). At the hearing, Ted's attorney represented to the court that his hourly fee was $300 and that he had spent six hours responding to the motion and attending the hearing.

could not locate it; and that the Document reflects "what she would have received retiring in 2007, which changes the calculations for the community portion of the retirement significantly."[3]

Ted filed a response to Sandra's motion.[4] Ted argued that there was no evidence that he had deliberately failed to disclose any document to Sandra; that no motion to compel discovery was heard by the court; that Sandra did not address the existence or whereabouts of the Document with Ted or his attorney; and that Ted was unaware that the Document existed, that it had been left at the residence, or that Sandra was searching for it. He also argued that she was aware of the Document's existence and content, that she had the opportunity to obtain a copy from other sources, that both parties during the mediation were aware of the separate property claim that Sandra was making regarding her pension and the discrimination lawsuit, and that she was able to calculate and negotiate her claim with Ted regarding the separate property

---

[3] She further explained:

> Without the proof of benefits [Sandra] would have received retiring in 2007, (Monthly pension of $5,993.17) compared with her monthly retirement of $10,286.08, including settlement for discrimination lawsuit. Petitioner could not overcome in trial the community presumption of the retirement accrued during marriage. Without the benefit of the calculations the division of the community estate changed significantly. Although Petitioner received her pension in the divorce division, she could not receive additional community assets to equalize the property division without factoring in the additional separate property component of her retirement due to the discrimination portion of the retirement award. She was compelled to accept the division of community property without the benefit of factoring in her separate property component of her retirement during marriage.

[4] In his response to Sandra's motion to set aside, Ted sought sanctions under rule 13 of the Texas Rules of Civil Procedure and chapter 10 of the Texas Civil Practice and Remedies Code. *See* Tex. R. Civ. P. 13 (authorizing court to impose sanction when statement in pleading is known to be groundless or false); Tex. Civ. Prac. & Rem. Code § 10.004 (authorizing court to impose sanction for frivolous pleading or motion).

5

component of her pension during the mediation. As support, Ted cited Sandra's first amended inventory and appraisement sworn and signed by Sandra on May 25, 2020, that referenced the separate property portion of her pension, stating that she had "26 years of service which [was] her separate property from years accrued prior to marriage, plus the years and age given to her as part of the lawsuit settlement for future years she would have worked" and that listed the separate property portion as 67% and the community property portion as 33%.

In February 2021, the trial court held an evidentiary hearing on Ted's motion to enter the final decree and Sandra's motion to set aside the MSA. During the hearing, Sandra testified that she "received an unequitable portion of the community property" because she did not have the Document available at the time of the mediation. She also testified that she had "a lot of duress" because of family violence by Ted, but she did not allege or testify that he had committed physical violence against her. Following the hearing, the trial court granted Ted's motion to enter, signed the final decree of divorce, denied Sandra's motion to set aside the MSA, and ordered Sandra to pay attorney's fees of $2,400 to Ted's attorney. Sandra filed a second motion for new trial, which was overruled by operation of law. This appeal followed.

**ANALYSIS**

In five issues, Sandra argues that: (1) the trial court abused its discretion by not setting aside the MSA because it was procured by fraud, duress, coercion, or other dishonest means; (2) the trial court erred in failing to consider the threat of family violence that she suffered in trying to prove her claim of duress; (3) the trial court abused its discretion in awarding attorney's fees; (4) she did not waive her right to appeal the MSA; and (5) she did not voluntarily accept the benefits of the MSA.

6

**Ted's Motion to Dismiss**

As a threshold matter, Ted has filed a motion to dismiss Sandra's appeal based on the MSA's provision that the parties "waive any right to appeal following rendition of the judgment in this case."

Contractual waivers of the right to appeal, including in the context of a final divorce decree, have been found to be enforceable. *See Huber v. Huber*, No. 04-17-00326-CV, 2018 Tex. App. LEXIS 2686, at *11–13 (Tex. App.—San Antonio Apr. 18, 2018, pet. denied) (mem. op.) (concluding that both parties waived their right to appeal from final decree based on waiver provision in informal settlement agreement); *see also In re Spiller*, No. 04-18-00522-CV, 2019 Tex. App. LEXIS 4608, at *4–5 (Tex. App.—San Antonio June 5, 2019, pet. denied) (mem. op.) ("The right to appellate review may be waived by Rule 11 agreement."); *Emerson v. Emerson*, 559 S.W.3d 727, 734, 737–38 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (concluding that waiver of right to appeal from trial court's ruling on request for attorney's fees was enforceable). Further, when a mediated settlement agreement meets the requirements of section 6.602 of the Texas Family Code, "a party is entitled to judgment on the mediated settlement agreement notwithstanding Rule 11, Texas Rules of Civil Procedure, or another rule of law." *See* Tex. Fam. Code § 6.602(c); *see Emami v. Emami*, No. 02-21-00319-CV, 2022 Tex. App. LEXIS 5840, at *12 (Tex. App.—Fort Worth Aug. 11, 2022, no pet.) (mem. op.) (explaining that MSA that complies with section 6.602 is irrevocable once signed).

In this case, Sandra agrees that the MSA meets the requirements of section 6.602: it is signed by both parties and their respective counsel and states in boldface type that it is not subject to revocation. *See* Tex. Fam. Code § 6.602(b). "However, a court is not required to enforce an MSA if it is illegal in nature or was procured by fraud, duress, coercion or other

dishonest means." *Triesch v. Triesch*, No. 03-15-00102-CV, 2016 Tex. App. LEXIS 2365, at *4 (Tex. App.—Austin Mar. 8, 2016, no pet.) (mem. op.) (citing *Spiegel v. KLRU Endowment Fund*, 228 S.W.3d 237, 241 (Tex. App.—Austin 2007, pet. denied); *In re Marriage of Joyner*, 196 S.W.3d 883, 890 (Tex. App.—Texarkana 2006, pet. denied)); *see Emami*, 2022 Tex. App. LEXIS 5840, at *13 (collecting cases holding that "trial court is not required to enforce an MSA that complies with the statutory requirements if it is illegal or was procured by fraud, duress, or coercion"). Thus, because the MSA may be set aside if it was procured by fraud, duress, coercion, or other dishonest means, Sandra may challenge in this appeal the trial court's denial of her motion to set aside the MSA based on these grounds. *See Triesch*, 2016 Tex. App. LEXIS 2365, at *4; *Spiegel*, 228 S.W.3d at 242.

On this basis, we deny Ted's motion to dismiss and turn to Sandra's first two issues that argue that the trial court abused its discretion by not setting aside the MSA on the grounds that it was procured by fraud, duress, coercion, or other dishonest means and erred in failing to consider the threat of family violence that Sandra suffered in trying to prove her claim of duress.

**Was the MSA procured by fraud, duress, coercion, or other dishonest means?**

*Standard of Review*

"We review a trial court's decision not to set aside a mediated settlement agreement for abuse of discretion." *Triesch*, 2016 Tex. App. LEXIS 2365, at *3 (citing *R.H. v. Smith*, 339 S.W.3d 756, 765 (Tex. App.—Dallas 2011, no pet.); *In re C.H., Jr.*, 298 S.W.3d 800, 804 (Tex. App.—Dallas 2009, no pet.)); *see Emami*, 2022 Tex. App. LEXIS 5840, at *3–4. "A trial court abuses its discretion when it acts arbitrarily or unreasonably, without reference to

8

guiding rules or principles." *Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011) (citing *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)). "A trial court also abuses its discretion by failing to analyze or apply the law correctly." *Id.* (citing *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992)).

"The party seeking to avoid enforcement of the MSA bears the burden to show that the agreement is unenforceable." *Choksi v. Choksi*, No. 09-19-00183-CV, 2020 Tex. App. LEXIS 8944, at *10 (Tex. App.—Beaumont, Nov. 19, 2020, pet. denied) (mem. op.). Thus, it was Sandra's burden to establish that the MSA was procured by fraud, duress, coercion, or other dishonest means. *See Triesch*, 2016 Tex. App. LEXIS 2365, at *4. In this context, we turn to her two issues that challenge the MSA on these grounds.

*Fraud by Nondisclosure*

As part of her first issue, Sandra argues that the trial court abused its discretion by not setting aside the MSA because Ted committed fraud by nondisclosure.

Fraud by nondisclosure "occurs when a party has a duty to disclose certain information and fails to disclose it." *Bombardier Aero. Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 219 (Tex. 2019) (citing *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997)). To establish fraud by nondisclosure, Sandra was required to show that: (1) Ted "deliberately failed to disclose material facts"; (2) he "had a duty to disclose such facts" to her; (3) she "was ignorant of the facts and did not have an equal opportunity to discover them"; (4) Ted intended her "to act or refrain from acting based on the nondisclosure"; and (5) she relied on the nondisclosure, which resulted in injury. *Id.* at 219–20.

Sandra contends that her verified motions and testimony during the February 2021 hearing established that Ted had a duty to turn over the Document that was in his possession but that he did not produce it in response to discovery, violating the discovery rules, or make it available to Sandra until after the mediation had occurred. Sandra further argues that Ted did not present evidence "to refute the circumstantial evidence tending to prove Sandra's claim that he intended her to rely on the [Document's] nondisclosure" and that she suffered injury because she "did not retain 100% of her separate property and Ted benefited from an inaccurately inflated community property interest value."

In reaching its decision to deny Sandra's motion to set aside the MSA on the ground of fraud by nondisclosure, however, the trial court reasonably could have considered the MSA's award of the "CPS annuity/pension [certificate number] 96689" to Sandra and her admission that the Document belonged to her originally. Because the Document belonged to her, Sandra was aware of its content. She also admitted that she had other sources for obtaining another copy of the Document or its content—her employer CPS and the attorney who represented her against CPS; she was given access to the marital residence to pick up her possessions, including her "office files," after she filed the petition for divorce; and she did not seek assistance from the court concerning pending discovery or access to the marital residence to pick up additional items prior to the mediation. Based on the MSA's reference to her "CPS annuity/pension [certificate number] 96689," and her admissions and opportunities to obtain the Document or the information contained in the Document prior to the mediation, the trial court reasonably could have found that Sandra failed to establish that she was ignorant of material

facts and that she did not have an equal opportunity to discover them.[5] *See id.* (requiring plaintiff to establish that she was ignorant of facts and did not have equal opportunity to discover them).

Sandra argues that Ted did not dispute her testimonial evidence and that there were "no circumstances in evidence tending to discredit or impeach" her testimony that was unequivocal and proved fraud by nondisclosure, citing this Court's opinion in *Dyer v. Dyer*, No. 03-16-00753-CV, 2018 Tex. App. LEXIS 4380, at *25 (Tex. App.—Austin June 15, 2018, no pet.) (mem. op.). The trial court, however, reasonably could have found that there were circumstances in the evidence tending to impeach or discredit her testimony, including her admission that the Document belonged to her. Thus, the trial court could have found that Sandra did not present credible evidence that before the mediation, Ted was aware that the Document existed, that Sandra did not have a copy of it, that she was looking for it, or that it was in one of her folders at the marital residence. *See Bombardier*, 572 S.W.3d at 219–20 (requiring proof that defendant deliberately failed to disclose information); *see also In re Lechuga*, No. 07-15-00088-CV, 2015 Tex. App. LEXIS 4718, at *8 (Tex. App.—Amarillo May 7, 2015, orig. proceeding) (mem. op.) (concluding that "[m]ere surmise and speculation is no evidence of fraud" that would support setting aside MSA (citing *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 89 (Tex. 2015))).

Applying the applicable standard of review, we conclude that the trial court acted within its discretion when it found that Sandra did not prove that the MSA should be set aside on

---

[5] During the hearing on Sandra's motion for new trial, Ted's attorney had directed the trial court to bates-stamped documents that Sandra produced in discovery that provided similar information to the Document's content.

the ground that Ted committed fraud by nondisclosure. *See Choksi*, 2020 Tex. App. LEXIS 8944, at *10.

*Duress and Coercion*

As part of her first issue, Sandra also argues that the trial court abused its discretion by not setting aside the MSA because she was coerced to sign the MSA and was operating under duress during the mediation. In her second issue, Sandra argues that the trial court erred in failing to consider the threat of family violence that she suffered in attempting to prove her claim of duress in entering the MSA.

"Coercion occurs if someone is compelled to perform an act by force or threat." *In re D.E.H.*, 301 S.W.3d 825, 829 (Tex. App.—Fort Worth 2009, pet. denied) (citing *Arnett v. Arnett*, No. 03-05-00056-CV, 2008 Tex. App. LEXIS 3184, at *4 (Tex. App.—Austin May 2, 2008, pet. denied) (mem. op.)). "Duress occurs when, due to some kind of threat, a person is 'incapable of exercising [her] free agency' and unable to withhold consent." *Arnett*, 2008 Tex. App. LEXIS 3184, *4 *(citing Dallas Cnty. Cmty. Coll. Dist. v. Bolton*, 185 S.W.3d 868, 877 (Tex. 2005)). To prove duress, a plaintiff must establish:

> (1) a threat or action was taken without legal justification; (2) the threat or action was of such a character as to destroy the other party's free agency; (3) the threat or action overcame the opposing party's free will and caused it to do that which it would not otherwise have done and was not legally bound to do; (4) the restraint was imminent; and (5) the opposing party had no present means of protection.

*Choksi*, 2020 Tex. App. LEXIS 8944, at *11 (quoting *Kalyanaram v. Burck*, 225 S.W.3d 291, 301 (Tex. App.—El Paso 2006, no pet.)); *see Bolton*, 185 S.W.3d at 879 ("The compulsion must be actual and imminent, and not merely feigned or imagined.").

12

Sandra argues that "Ted exercised an undue influence over [her] by outwitting her in concealing a document proving her substantial separate property interest until *after* she signed an irrevocable [MSA], which is the essence of coercion." Sandra relies on her testimony that "without the critical document available at trial she was forced to sign the [MSA] because she 'had no recourse'"[6] and her "heavy burden" to present "clear and convincing evidence" to establish separate property. *See* Tex. Fam. Code § 3.003 (addressing community property presumption unless property can be established to be separate by "clear and convincing evidence"). As support for her argument that the trial court erred in failing to consider the threat of family violence that she suffered in attempting to prove her claim of duress, she relies on the definition of family violence in the Texas Family Code. *See* Tex. Fam. Code § 71.004 (defining family violence to include act by family member "that is a threat that reasonably places [another family] member in fear of imminent physical harm").

Sandra did not allege or testify that Ted committed physical violence against her during their marriage but that she lived with abuse which caused her thyroid to "[go] out" and half of her hair to fall out and that she was "triggered" when she saw Ted at the mediation. She testified that she "saw [Ted] standing out in the front of the building [at the mediation] when she was trying to get some information on the phone, and just his posture and his body triggered

---

[6] When asked why she was under duress without the Document during the mediation such that she had to sign the MSA, Sandra testified:

> I had no recourse. I had no recourse. It was sign it, get done with it, get what you get. I had nothing to go to trial with. He wasn't employed. He had been living off of me.

13

back everything." When the trial court asked her to tell the court about family violence, Sandra testified:

> Threating to come at me, taking all that I have to not come at you, shutting of doors, hollering, screaming, having to threaten him with the security at a hotel in New Orleans, having to push him away to not have a fight with my uncle, threatening with—him with the police no later than 2019 when I left the house and never returned because I knew he was on the verge of hitting me, him telling me that his temper was uncontrollable and he knew it, me asking him for a separation because I couldn't live with him because I knew if I went back I was going to be hit.[7]

She also testified that on July 7, 2019, Ted threatened her when he "said it was taking everything he had to not come at [her]," but that she left the room, and he did not hit her.

The trial court, as the trier of fact, could have found that although Sandra may have believed that she was the victim of family violence during the parties' marriage, she had not established that at the time she signed the MSA, she was acting under the influence of a threat by

---

[7] In response to the trial court's question about family violence, Sandra further testified after the above quoted testimony as follows:

> I'm a counselor, your Honor. It got to the point where I said if I didn't leave the home, how could I continue to be a counselor. I didn't have even my own house in order. His drinking, his slamming of doors, me telling him if you can't control your temper, you need to leave and go stay at a hotel, him telling people that he married me for my kids and my money, him calling me his sugar momma, him embarrassing me in Colorado in 2017 at a True Value Hardware after I had been in the emergency room for bronchitis where the cashier was speechless, and I sat in the car crying for an hour asking him why are you treating me this way.

When asked to elaborate on the family violence aspect of the True Value incident, Sandra testified that she "was dillydallying in the store, and he made a derogatory loud statement to where people overheard it, and [the] cashier was just verbally stunned." She testified that his statement was "if you don't get your ass over here, the car is leaving and you can walk home, something to that effect" and characterized this statement as a "[s]arcastic, ugly threat."

14

Ted which rose to the level of overcoming her free will or that compelled her to sign the MSA.[8] *See Arnett*, 2008 Tex. App. LEXIS 3184, *4; *see Bolton*, 185 S.W.3d at 879. Sandra was not in the same room with Ted at any time during the mediation, and she was represented by counsel and had a financial advisor available to assist her. *See Carson v. Carson*, No. 03-04-00521-CV, 2005 Tex. App. LEXIS 9250, at *3 (Tex. App.—Austin Nov. 4, 2005, no pet.) (mem. op.) (concluding that "bare assertions of intimidation and coercion, especially in light of the fact that [appellant] was represented by counsel, are insufficient to establish that the mediated settlement agreement is unenforceable"); *see also Durham v. Durham*, No. 03-03-00303-CV, 2004 Tex. App. LEXIS 2609, at *10–11 (Tex. App.—Austin Mar. 25, 2004, no pet.) (mem. op.) (observing that trial court did not have to credit and could have found party's testimony about coercion and duress not credible even though opposing party did not present controverting evidence about objective aspects of testimony). In her motions and during the hearings, she did not assert that Ted or anyone else threatened her during the mediation. *See Rabe v. Dillard's, Inc.*, 214 S.W.3d 767, 769 (Tex. App.—Dallas 2007 no pet.) (requiring proof of threat to do something that threatening party has no right to do to demonstrate duress).

The trial court also reasonably could have disbelieved Sandra's testimony about Ted's conduct toward her during their marriage. *See Choksi*, 2020 Tex. App. LEXIS 8944, at

---

[8] During the hearing, the trial court stated that it had "not heard anything [about] family violence" but "allegations of rude behavior" and "emotional triggers" about the health of Sandra's mother. The trial court similarly stated, "There is an allegation of family violence although there has been no proof there has been any family violence at all. At most maybe an allegation of a threat." The trial court explained that it had "heard nothing that rises to the level of being in fear for her life to where she signed something as if a gun was to her head." In contrast with section 153.0071 of the Texas Family Code, section 6.602 does not include family violence as an exception to enforcing an MSA. *See* Tex. Fam. Code §§ 6.602, 153.0071 (authorizing court to decline to enter judgment on MSA in context of suit affecting parent-child relationship if party to agreement was victim of family violence and circumstances impaired party's ability to make decision).

*12 (stating that trial court, when acting as factfinder, "is the sole judge of witness credibility and the weight to give to witnesses' testimony" (quoting *In re Lopez*, No. 14-18-00797-CV, 2020 Tex. App. LEXIS 6175, at *7 (Tex. App.—Houston [14th Dist.] Aug. 6, 2020, no pet.) (mem. op.)). In her August 2019 original petition, Sandra's ground for divorce was because of "discord or conflict of personalities," and it was not until the end of May 2020 that she amended her petition to assert that Ted was guilty of acts against Sandra that constituted cruel treatment. At the October 2020 hearing, Sandra did not raise family violence but asserted that the mediator misled her and that Ted had hidden assets.

As to her argument that she was forced to sign the MSA without the Document, Sandra asserts that Ted's action of "maintaining control of a critical document proving [her] substantial property interest in her CPS annuity pension that he was required to produce in response to discovery precluded [her] from exercising free agency to withhold consent to the [MSA]." Sandra relies on pending discovery requests to Ted, but the trial court could have determined that Sandra's purported belief about the Document's importance was not credible, particularly because she was represented by counsel and had a financial advisor available during the mediation, she did not object to proceeding with the mediation without the Document, the MSA addressed her pension from CPS, and she agreed in the MSA that all discovery obligations ceased. *See Choksi*, 2020 Tex. App. LEXIS 8944, at *12; *see also Emami*, 2022 Tex. App. LEXIS 5840, at *14 ("A claim of duress also 'must be established based on the conduct of the party accused of duress, not the emotions of the purported victim.'" (quoting *Weinberg v. Baharay*, 553 S.W.3d 131, 134 (Tex. App.—Houston [14th Dist.] 2018, no pet.))).

16

Applying the applicable standard of review, we conclude that the trial court acted within its discretion when it found that Sandra did not prove that the MSA should be set aside based on her claims of duress and coercion. *See Choksi*, 2020 Tex. App. LEXIS 8944, at *10.

*Other Dishonest Means*

As part of her first issue, Sandra further argues that "[e]ven if this Court decides Ted's actions did not rise to the level of fraud, coercion, or duress, Ted's actions in harboring a critical document that he should have produced in response to discovery was dishonest and as a result Ted received a portion of Sandra's separate property through the erroneous inflation of the community property estate." But the trial court reasonably could have found that she did not present credible evidence that Ted was aware of the Document's existence or that it was in a folder at the marital estate prior to the mediation or that she was not aware of the Document's content during the mediation. Thus, applying the applicable standard of review, we conclude that that the trial court did not abuse its discretion in denying Sandra's motion to set aside the MSA on the ground of other dishonest means. *See id.*

For these reasons, we overrule her first and second issues.

**Remaining Issues**

Because we have concluded that the trial court did not abuse its discretion in denying Sandra's motion to set aside the MSA, we conclude that she is bound by her contractual agreement in the MSA to waive her right to appeal after the rendition of final decree. *See* Tex. Fam. Code § 6.602; *Huber*, 2018 Tex. App. LEXIS 2686, at *11–13 (concluding that both parties waived their right to appeal from final decree based on waiver provision in informal settlement agreement); *see also Emerson*, 559 S.W.3d at 737–38 (concluding that waiver of right

to appeal from trial court's ruling on request for attorney's fees was enforceable).  On this basis, we overrule her remaining issues.

## CONCLUSION

For these reasons, we affirm the trial court's final decree of divorce.

_____

Melissa Goodwin, Justice

Before Justices Goodwin, Baker, and Smith

Affirmed

Filed:   December 8, 2022